**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>STEPHANIE'S TOO, LLC,<br><br>Debtor. | Case No. 18-32221 (JNP)<br><br>Chapter 7<br><br>Judge: Jerrold N. Poslusny, Jr. |

## MEMORANDUM DECISION

**JERROLD N. POSLUSNY, JR., U.S. Bankruptcy Judge**

Stephanie's Too, LLC (the "Debtor"), and its attorneys Kasen and Kasen, P.C. ("Kasen," and with the Debtor, the "Objectors") filed an objection (the "Objection") to a fee application (the "Fee Application") filed by the Joseph A. McCormick, Jr., P.A. ("McCormick"), as counsel to the Chapter 7 Trustee. The Objectors generally argue that McCormick spent more than a reasonable amount of time on many tasks and performed unnecessary tasks that should not be compensated by the estate. For the following reasons, the Objection is overruled and the Court will approve the Fee Application.

### Background

The Debtor, a restaurant and bar located in Berlin, New Jersey, filed a petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") on November 8, 2018 (the "Petition Date"). The case was converted to Chapter 7 on June 12, 2020, and Joseph Marchand was appointed the Chapter 7 Trustee (the "Trustee") on June 16, 2020. A court order authorizing the Trustee's retention of McCormick as counsel was entered on June 23, 2020. The Trustee had difficulty obtaining books and records from the Debtor's principal, and therefore, McCormick was forced to prepare Bankruptcy Rule 2004 subpoenas in order to obtain necessary information related to the Debtor and its records. Dkt. No. 194. Once the Trustee reviewed the Debtor's assets, he discovered that the real estate upon which the restaurant sat was owned by a

related entity, but that the Debtor owned the liquor license (the "Liquor License") which the Debtor utilized in its business. The Trustee also discovered that the Liquor License was on COD status due to violations with the New Jersey Division of Alcoholic Beverage Control (the "ABC") and outstanding invoices from wholesalers. Additionally, the Liquor License had to be renewed by June 30, 2020, just 14 days after the Trustee's appointment, and the Trustee was forced to seek an extension of time to obtain the renewal, a process made more time consuming due to the COVID-19 pandemic limiting the availability of personnel in both the Berlin Clerk's Office and the ABC. Dkt. No. 201. Thereafter, McCormick both negotiated and filed motions to resolve the violations and outstanding claims to remove the COD status and sell the Liquor License. Id.

After administering the Debtor's assets, McCormick filed the Fee Application seeking $33,728.76 in compensation. Dkt. No. 194. The Objectors initially listed generalized objections to the amount of time spent on tasks, but with few specific objections to McCormick's time entries. Dkt. No. 198. McCormick filed a response and the Court held a hearing (the "Hearing") on August 5, 2021. At the Hearing, the Objectors argued that McCormick took an unreasonable amount of time to complete tasks such as phone calls and emails, but again did not identify any specific entry. The Objectors also argued that the Trustee should not have expended estate resources having McCormick file objections to pre-petition claims because the estate was administratively insolvent. Hrg. at 3:00. McCormick explained that the objection to claims was necessary to allow the Trustee to transfer the Liquor License without any deficiencies on the title. The Court informed the parties that after reviewing the Fee Application and questioning McCormick, it did not find any of the entries objectionable but would allow the Objectors time to file a supplemental objection, identifying which specific entries they believed were unreasonable and should not be compensated.

Following discovery, the Objectors filed a supplemental objection (the "Supplemental Objection"), which repeats the allegation that McCormick should not be compensated for the time spent objecting to claims. Dkt. No. 206. Attached to the Supplemental Objection as Exhibit B is a list of pleadings prepared by McCormick, on which Mr. Kasen handwrote the amount of time McCormick billed to prepare those documents. The Supplemental Objection argues that the time necessary to prepare these pleadings should be less than what was billed. Id. Exhibit D to the Supplemental Objection is a chart listing 75 documents and pieces of correspondence prepared by McCormick, for which the Fee Application seeks compensation. The chart includes a brief description of the document or correspondence, the amount of time billed, and the bases for objecting which is a single sentence repeated for each entry, "[i]nflated time or not performed within a reasonable time commensurate with complexity, importance and nature of problem, issue or task addressed." Dkt. No. 206-4. Attached to Exhibit D are copies of the 75 documents and correspondence, labeled Exhibits 1 – 75, to which the Objectors object in the chart.[1] Finally the Supplemental Objection argues that McCormick's fee should be reduced to no more than $15,000, a reduction of $18,728 (a 55% reduction). Dkt. No. 206. McCormick filed a response noting that, even if the Court upheld every single objection raised in the Supplemental Objection, the total reduction in fees would only be $6,446, approximately one-third of the total reduction suggested by the Objectors. Dkt. No. 207. The parties agreed that no further hearings were necessary.

---

[1] Exhibit D is difficult to follow because it does not provide the dates corresponding to the particular time entry to which the Objectors object, preventing the Court from easily linking the specific entry listed in the chart to time entries in the Fee Application. In addition, the chart lists several time entries multiple times, although McCormick billed the time once, which caused further confusion and delay in analyzing the Supplemental Objection.

**Discussion**

A.    Compensation

Under section 330(a) of the Bankruptcy Code, bankruptcy courts may award reasonable compensation for actual, necessary services rendered by the attorney and paraprofessionals employed by the attorney, the reasonableness to be based on (i) the nature of the services, (ii) the extent of the services, (iii) the value of the services, (iv) the time spent on the services, and (v) the cost of comparable services in non-bankruptcy cases. In re Busy Beaver Bldg. Ctrs., Inc., 19 F.3d 833, 840 (3d Cir. 1994) (citing 11 U.S.C. § 330(a)). Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 2016 lays out the procedure for a professional to seek compensation from the court and requires that any party seeking compensation for services or reimbursement of expenses file an application with the court "setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested." Fed. R. Bankr. P. 2016(a). Both the United States Trustee guidelines, and New Jersey Local Bankruptcy Rule 2016-1 require that the application for compensation include a breakdown of the time spent by each person seeking compensation in increments of one-tenth of an hour. D.N.J. LBR 2016-1(2)(C); U.S. Trustee's guidelines for fee and reimbursement applications, Bankr. Proc. Manual § 2016:3 (2021 ed.).

Bankruptcy fees are calculated using the lodestar method, under which a court establishes a reasonable hourly rate for each set of compensable services, and then multiplies each rate by the reasonable number of hours of compensable work included in each respective set (corresponding to the time and extent of the services in § 330(a)(1)). Busy Beaver, 19 F.3d at 856. Bankruptcy Courts are "accorded wide discretion" to review applications for compensation. In re Lan Assocs., XI, L.P., 192 F.3d 109, 122–23 (3d Cir. 1999); In re Smith, 331 B.R. 622, 627 (Bankr. M.D. Pa. 2005). However, in setting an attorney's fee, the Third Circuit has stated that a bankruptcy court

should not become "enmeshed in a meticulous analysis of every detailed facet of the professional representation." Smith, 331 B.R. at 628 (citing Busy Beaver, 19 F.3d at 844–45). "Because its time is precious, the reviewing court need only correct reasonably discernible abuses, not pin down to the nearest dollar the precise fee to which the professional is ideally entitled." Busy Beaver, 19 F.3d at 845.

The applicant seeking compensation and reimbursement of expenses bears the burden of persuasion to establish that the fees requested meet both prongs of section 330 of the Bankruptcy Code as reasonable and necessary. Smith, 331 B.R. at 627; In re Mazzocone, 1995 WL 113110, at *8 (E.D. Pa. Mar. 16, 1995) (citing In re Kenneth Leventhal & Co., 19 F.3d 1174, 1177, 1178 (7th Cir. 1994); Cont'l Ill. Nat'l Bank & Trust Co. v. Charles N. Wooten, Ltd. (In re Evangeline Ref. Co.), 890 F.2d 1312, 1326 (5th Cir. 1989)). The applicant must provide detailed records identifying the professionals involved, the specific tasks they performed, the amount of time spent on each task, and the applicable billing rate, as well as an explanation of the expenses as required under the rules described above. Mazzocone, 1995 WL 113110, at *8.

However, "once this information is provided, the applicant has created a prima facie case, and any objector to the application bears a burden of production with regard to evidence that would justify reducing the fees sought." Id.; see also In re Meade Land & Dev. Co., 527 F.2d 280, 284 (3d Cir. 1975) (holding that a fee application colorably showing that attorney's services were legal in nature creates prima facie case which can only be rebutted by production of contrary evidence); In re PJ Fin. Co., LLC, 2012 WL 5879728, at *4 (Bankr. D. Del. Nov. 20, 2012); In re Quigley Co., Inc., 500 B.R. 347, 357 (Bankr. S.D.N.Y. 2013); In re Blackwood Assocs., L.P., 165 B.R. 108, 111–12 (Bankr. E.D.N.Y. 1994); In re Hunt's Health Care, Inc., 161 B.R. 971, 981 (Bankr. N.D. Ind.1993); In re Ralph Marcantoni & Sons, 62 B.R. 245, 247 (D. Md. 1986).

In this case, the Court reviewed Fee Application and found that the rates charged by McCormick were reasonable, and that McCormick had sufficiently detailed the time and cost of the services provided and explained the nature and extent of those services as well as their value to the estate, and therefore had met its burden and established a prima facie case for compensation and reimbursement under section 330 of the Bankruptcy Code. Hrg. at 9:00. As such, the Court must determine whether the Objectors have met their burden to show that the requested compensation should be reduced.

B. The Objection

Initially, the Court considers the argument that McCormick's allowed fee "should be no greater than $15,000." Dkt. No. 206. This would be a reduction of over $18,000 from the amount requested in the Fee Application. Dkt. No. 194. However, after reviewing every specific objection listed in the Supplemental Objection, the Court is unable to determine how the Objectors came to this figure. As noted, McCormick's reply states that, assuming the Court agreed with all 75 objections listed in Exhibit D, the resulting reduction in fees would total only $6,446. Dkt. No. 207. The Court reached a similar conclusion, and, assuming the Court also denied all the fees associated with McCormick's filing of the motion to disallow claims, and the amounts listed in Exhibit B, the total reduction would be no more than $10,208.82, leaving an allowed fee of approximately $23,520. See Dkt. No. 206. As such, a reduction of fees to $15,000 appears to be an entirely unsupported, arbitrary amount, and the Court overrules the objection as it relates to any amount over those specifically listed in the Supplemental Objection because the Objectors failed to meet their burden as to those portions of the Objection.

The remaining objections in the Supplemental Objection can be broken down into three broad categories: (1) the objection to compensating McCormick for filing a motion to reduce or disallow claims; (2) the objection to the amount of time spent on specific pleadings listed in

Exhibit B of the Supplemental Objection; and (3) the objection to the amount of time spent on certain documents and correspondence listed in Exhibit D of the Supplemental Objection.

### i. Motion to Disallow Claims

The Supplemental Objection argues that McCormick should not have spent any time objecting to pre-petition claims because the case was administratively insolvent. The Court questioned McCormick about this at the Hearing, who stated that the pre-petition claimants were liquor wholesalers alleging COD status on the Liquor License. McCormick explained that certain creditors refused to release the COD status, making it necessary to resolve those claims to avoid the Liquor License carrying COD status through the sale and that removing any cloud from title ensured maximum value. Hrg. at 2:00. Although the Supplemental Objection raised this objection again, it provided no further argument or law on the issue. Dkt. No. 206. The Objectors argue that the Trustee spent too much time on this objection, as it was "virtually not contested." Dkt. No. 198. However, a review of the Fee Application and the docket shows this not to be the case. One of the claimants opposed the motion, and the parties engaged in negotiations resulting in a settlement in which the creditor released the COD status but maintained an unsecured claim against the estate. See Dkt. No. 194.

After reviewing the filings of both parties, the Court concludes that McCormick met its initial burden to establish that the fees requested were reasonable and beneficial to the estate. The Objectors failed to present any law or evidence sufficient to refute the prima facie case made by McCormick. Therefore, this portion of the Objection is overruled.

### ii. Objection to Time Spent on Pleadings

The Objectors argue that the time spent on the pleadings listed in Exhibit B was excessive. As noted, Exhibit B is a list of pleadings prepared by McCormick on which Mr. Kasen handwrote the amount of time McCormick seeks to be compensated for preparing these pleadings. Dkt. No.

7

206. The Supplemental Objection states that "[Mr. Kasen has] noted the times for various documents prepared by [McCormick] . . . [t]he undersigned believes that the times charged . . . are inflated." Id. However, the body of the Supplemental Objection does not address any of the pleadings specifically, but instead lists each pleading along with the time Mr. Kasen believes is reasonable to prepare such pleading, and makes a single argument: "I base the times that I think should have been attributable to the services rendered on my 50 plus years of practicing bankruptcy law." Id.

This argument is made without regard to the facts and circumstances of the particular pleading in question. Many things can affect the length of time it takes to prepare and file a pleading, including, for example, the complexity of the matter and the relative cooperation or opposition an attorney may expect from other parties in interest. McCormick also noted that all these pleadings were prepared and filed during the COVID-19 pandemic, which caused courts, attorneys, and governmental offices to adjust their usual practices and implement new procedures to work from home, with less direct contact with coworkers and caused delays in almost every aspect of life. McCormick's uncontroverted explanation in its pleadings and during the Hearing is that these delays were pervasive in this case, especially in relation to renewing the Liquor License.

As noted, the Court previously reviewed the Fee Application and did not find any of the requests made to be inflated or improper, finding that McCormick had supplied sufficient detail to establish a prima facie case for the amounts requested. As such, the burden is on the Objectors to present argument or evidence that the fees requested should be reduced. The Supplemental Objection fails to present any such argument or evidence, and Mr. Kasen's subjective view based on his experience as a broad, sweeping statement applicable to all the pleadings, without more, is insufficient to meet that burden. Therefore, the Court overrules this portion of the Objection.

iii. Objection to Time Spent on Correspondence and Other Documents

The chart in Exhibit D lists 75 communications, primarily emails, phone calls, and letters, for which McCormick seeks compensation, and the Objectors' reason for objecting to each. The chart repeats the same objection for all 75 entries: "[i]nflated time or not performed within a reasonable time commensurate with complexity, importance and nature of problem, issue or task addressed." Dkt. No. 206. At the Hearing Mr. Kasen stated that he did not believe McCormick was untruthful or "padded" its hours, but only that he believed the times spent on tasks was unreasonably long. Hrg. at 3:30. As such, the only issue is whether the time for which McCormick requests compensation is reasonable under the lodestar analysis. See Busy Beaver, 19 F.3d at 856. The Objectors argue that the Fee Application repeatedly asserts that it took McCormick 0.2 hours, or 12 minutes for short emails that should not have taken 12 minutes to draft. While it is not necessary to address each of the 75 entries in question, it is appropriate to consider a few examples to explain why the Court overrules this portion of the Objection.

One example is an email dated January 6, 2021, stating "thank you," which is listed on the Fee Application as having taken 0.2 hours. The Supplemental Objection argues it should not have taken 12 minutes to type out "an email expressing thank you." There are two flaws with this argument: (1) the finished product of an email stating "thank you," does not necessarily reflect the work that was required in that entry; and (2) that billing "0.2" hours does not equal 12 minutes, but only more than 6 minutes.

The email at issue was written to Sheena Rinkle, the chief of the ABC, in response to her email and attached letter agreeing to extend the deadline for payment to renew the Liquor License. Dkt. No. 206. As a result, the 0.2 hours listed on the Fee Application likely related not only to typing the reply, but also to the opening and reading of Ms. Rinkle's email and the attached letter. This is particularly significant given the importance of the content of this letter, which discussed

9

the terms of the extension of time to renew the Liquor License, the only asset of the estate with any significant value, and there would be no recovery for any parties if the Liquor License was not renewed and then sold. Additionally, both the Local Rules, and the U.S. Trustee guidelines require that Fee Application break time down into 6 minutes increments. Thus, a Fee Application that lists a particular task takes 0.2 hours does not mean that the task necessarily took 12 minutes, but that it took more than 6 minutes. It was not unreasonable for McCormick to take more than 6 minutes to read the email as well as the attached letter to ensure that he understood the content and send a thank you reply.

This same reasoning applies to the objections to the time spent on the correspondence in Exhibits 1 and 2, which are both letters written by McCormick regarding the Liquor License. Exhibit 1 is a copy of a letter explaining that the Trustee has been appointed to the Debtor's case, that the Trustee is aware of the requirement that the Liquor License be extended, that he was unable to complete this task online, and seeks information for where to obtain the required form to apply for an extension. Similarly, Exhibit 2 is a copy of a letter seeking a title search on the Liquor License and enclosing a check for such services. The Fee Application sought reimbursement for 0.2 hours of work for each letter. The Supplemental Objection argues that such activities should not be compensated for more than 0.1 hour. As noted, the Objectors provide no argument or evidence that McCormick is lying about the amount of time it took to prepare these documents, so the only question is whether time spent by McCormick was reasonable under the lodestar analysis. The letters were written two weeks apart, and include many specific facts, including the 12-digit license number as well as a reference to specific dates and other figures. It is entirely reasonable that an attorney would not have such intricate details memorized, requiring a review of the file prior to drafting such a letter to ensure there were no errors related to the specific facts, and as a

result such a task could reasonably take 7 to 12 minutes. These objections appear to be based on the same reasoning discussed above, and so are overruled.

The Court declines to discuss each of the 75 objections listed in Exhibit D in such detail, see Busy Beaver, 19 F.3d at 844–45, but after reviewing them generally, finds many are based on the same rationale, and that the Supplemental Objection fails to provide factual or legal argument to support the objections, which appear to be based exclusively on the argument that the Court should take Mr. Kasen's opinion for what is reasonable over McCormick's statement of the time actually required to complete the task. Additionally, the Court notes that of the 75 entries in Exhibit D, almost 50 of them are time entries of 0.2 hours that the Objectors argue could not reasonably have taken longer than 0.1 hour. Dkt. No. 206. Meaning that almost two-thirds of the objections in Exhibit D boil down to the argument that it was unreasonable for McCormick to take 7 minutes to complete a task that another attorney might have completed in 5 or 6 minutes.

The Supplemental Objection also argues that it appears McCormick treats 0.2 hours as the minimum time that each entry could be charged because he charged at least 0.2 hours for each of the 75 tasks listed in Exhibit D. However, the Fee Application includes more than 250 total tasks, many of which were billed at 0.1 hour. As such, this argument is not supported by the facts. Similarly, Exhibit D lists three separate objections, listed as Exhibits 10, 19, and 20, each referencing a request for compensation for 1.4 hours of time to related to a subpoena, which at first blush appears to indicate a total of 4.2 hours, and potentially excessive. Dkt. No. 206-4 pages 1–2. However, a review of the Fee Application reveals there is only a single entry, dated August 19, 2020, which requests compensation of 1.4 hours related to subpoenas. This is a reasonable amount of time to spend on the subpoenas at issue, and so these objections are also overruled.

More generally, as discussed above, the Court reviewed Fee Application to determine whether the time to complete the tasks was "reasonable," and determining what is reasonable

requires the Court consider the specific circumstances of the matter. In this case, the Trustee was appointed shortly after the COVID-19 pandemic began, and much of the work done required communication with state agencies, and counsel for other parties in interest. McCormick's work was made, if not more complicated, at least more difficult and time consuming, due to limited staffing and employees working from home.

The Supplemental Objection does not offer specific reasons why the Court should find the time it took McCormick to complete specific tasks to be unreasonable. As noted, the objections listed in Exhibit D repeatedly copied and pasted the same objection without regard to circumstances of the particular task in question. Similarly, the Supplemental Objection groups all of the objections in Exhibit B together, and offers one broad objection to all of them. However, upon review of the specific entries complained of in the Supplemental Objection, the Court finds the time taken by McCormick to be reasonable. Further, general objections to the overall amount requested in the Fee Application is equally unfounded given the amount of work performed and the circumstances under which that work was performed. The Court's own experience in working during the pandemic supports this, and after reviewing the Fee Application and the objections, the Court finds the compensation requested in the Fee Application to be reasonable.

### iv. Remaining Objections

The Supplemental Objection includes several other arguments that do not fall into the categories above. For example, it argues that the application to renew the Liquor License should have been completed by the Trustee, and not his counsel, McCormick. Dkt. No. 206. However, the Objectors have not offered, and the Court has not uncovered, any caselaw, statute or rule which would require this be done by the Trustee, or otherwise prevent McCormick from being compensated for such services. It appears reasonable that the owner of a liquor license would have its attorney complete such functions to be safe, particularly in this case, where the deadline to

renew the Liquor License was expiring and it was being renewed only upon obtaining an extension. See Dkt. No. 207. As noted, the burden is on the Objectors to overcome the prima facie case established by McCormick, and without citing any authority that would prevent McCormick from being compensated for such work, the Objectors have failed to meet this burden.

Additionally, the Supplemental Objection argues that McCormick seeks compensation twice for the same work. Specifically, that there is a "letter to the acting chief of Bureau of enforcement of ABC enclosing a check." Dkt. No. 206. However, as with other objections, the Supplemental Objection fails to identify where in the Fee Application this time was charged twice, and the Court only found this request in the Fee Application once, on page 17. Dkt. No. 194-3. The Objectors have the burden to establish their case but fail to tie any objections to the corresponding entries on the Fee Application, and although the Court sifted through the Fee Application to find the bases for these objections, it was unable to here. Therefore, this objection is overruled as well.

### Conclusion

The Court reviewed the Fee Application and found the compensation requested to be reasonable, and that the McCormick met its burden of proof for the requested award of compensation. Particularly given the difficulty and uncertainty of work practices during the unprecedented environment that existed during the COVID-19 pandemic, the Court found the time spent on tasks to be reasonable. Once McCormick established a prima facie case, the burden shifted to the Objectors to establish that the compensation requested was not reasonable, and they failed to meet that burden. Therefore, the Objection is overruled, and the fees will be awarded as requested.

Dated: December 3, 2021

JERROLD N. POSLUSNY, JR.
U.S. BANKRUPTCY COURT JUDGE